**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

CHARLIE TAYLOR                                                                                    PLAINTIFF

v.                                                                                            No. 4:04CV339-P-A

SONJA STANCIEL, ET AL.                                                                      DEFENDANTS

**MEMORANDUM OPINION**

On March 17, 2005, the court issued an order directing the plaintiff in this case to show cause why his pending cases should not be dismissed – and why the court should prohibit him from filing any future actions in this court without prior written approval from a district judge. The court issued the order after dismissing the present case as frivolous – and after a review of the plaintiff's many other cases which have likewise been dismissed as frivolous or for failure to state a claim. The plaintiff responded to the court's order on March 28, 2005, with a "Motion for an Order to Show Cause," and on March 30, 2005, with a second "Motion for an Order to Show Cause," and a motion for relief from judgment. The court has considered all three responses, and the matter is ripe for resolution. For the reasons set forth below, the plaintiff shall be prohibited from filing any future actions in this court without prior written approval from a district judge.

**Facts - As Alleged**

On November 10, 2003, defendant Sonja Stanciel ("Stanciel") determined that Taylor kept more legal and religious material in his cell and in storage at the Mississippi State Penitentiary than is permitted under prison rules. Stanciel ordered Taylor to sign a non-allowable property sheet and to provide an address to send the excess religious and legal material. Taylor refused to do either, and Stanciel executed a rule violation report (# 565234) for failing to obey

the order of a staff member.  Taylor attended a hearing during which Stanciel testified about the events.  The disciplinary committee found Taylor guilty of the infraction and penalized him with thirty days loss of privileges.  Taylor never did provide an address for mailing his excess materials, which were destroyed June 10, 2004.  Taylor claims that he required the materials to litigate in his criminal case and several pending civil cases and that their destruction hurt his legal position in several pending cases.  Taylor filed a grievance with the Administrative Remedy Program, challenging the validity of the finding of his guilty on the rule violation report.  After that process was complete, the rule violation report remained on Taylor's record, and he filed suit in this court November 2, 2004.

## Claims In This Case

Taylor claims that he was unjustly found guilty of refusing to obey the order of a staff member as stated in Rule Violation Report #565234.  He argues further that the removal and destruction of his religious and legal materials constitutes denial of access to the courts – and a taking of his property without due process of law.  Finally, he claims that a finding of guilty at a disciplinary hearing based solely upon the testimony of prison staff constitutes a violation of due process.  Taylor seeks to have CO2 Sonja Stanciel, Lieutenant Brenda Thompson, Superintendent Donald Cabana, and Commissioner Christpher Epps arrested, charged, and indicted for the taking of his property and for interfering with his access to the courts.  As discussed in the memorandum opinion, these claims are wholly without merit and have been dismissed as frivolous.  The court has directed Taylor to show cause why he should not be sanctioned for filing numerous frivolous suits.

**A Brief History of Charlie Taylor's Numerous Frivolous Cases**

This court's cases *Taylor v. Bryan*, 1:98CV222-S-D, *Taylor v. Pennington*, 4:01CV198-P-D, and *Taylor v. Carlize*, 4:04CV24-M-D, as well as Southern District of Mississippi cases *Taylor v. Waddle*, 3:01CV183-BN, *Taylor v. Brantley*, 3:01CV222-LN, *Taylor v. Noblin*, 3:01CV448-BN and *Taylor v. Ezell*, 2:01CV150-PG, were all dismissed either as frivolous or for failure to state a claim upon which relief could be granted. Thus, including the instant case, Charlie Taylor has accumulated eight "strikes," five more than the number necessary to prohibit him from filing *in forma pauperis* complaints under 28 U.S.C. §§ 1915 (e)(2)(B)(i), (ii ) and 1915(g). Having "struck out," Taylor was prohibited from filing *in forma pauperis* cases in this court unless he is in imminent danger of serious physical harm. 28 U.S.C. § 1915. Undeterred, Taylor has kept up an unrelenting pace of frivolous filing; he has filed numerous suits, and in each suit he has filed multitudinous long and rambling motions. In light of the numerous colossal papers he has filed here, the court is not surprised that Taylor's personal collection of litigation documents exceeded the volume permitted under Mississippi Department of Corrections policies.

**Charlie Taylor's Response to the Court's Show-Cause Order**

Taylor responded to the court's March 17, 2005, show-cause order with three separate documents. In the interest of brevity, the court shall not discuss each document separately; instead the court shall simply address the various arguments in the three documents.[1] Taylor first argues that the March 17, 2005, show-cause order is void, as it does not have this judicial officer's pen-and-ink signature at the bottom. Next, Taylor alleges that the court's previous

---

[1] Taylor filed a fourth document entitled "Motion to Show Cause" on March 30, 2005, but it involved interference with issuance of a summons, not a response to the court's March 17, 2005, show-cause order.

adverse rulings evince bias against him. Finally, Taylor argues that he did not have a hearing regarding the rule violation report. For the reasons set forth below, the court finds that Charlie Taylor has failed to show cause why the court should not impose a sanction upon him for repeatedly filing meritless suits in this court.

## Discussion

Taylor first challenges the validity of the court's March 17, 2005, show-cause order, arguing that the lack of a pen-and-ink signature renders the order void. This argument is without merit, as the court has recently instituted the Case Management/Electronic Case filing ("CM/ECF") system, under which a district judge may use the electronic signature Charlie Taylor describes in his response. Taylor next argues that the court's previous rulings adverse to Taylor evince bias or prejudice against him. Taylor thus seeks recusal of the presiding judge in this case. This allegation is without merit, as a judge's adverse ruling, even when later reversed or vacated on appeal, does not by itself constitute grounds for recusal. *Garcia v. Woman's Hospital of Texas*, 143 F.3d 227 (5th Cir. 1998). The adverse rulings (originating with this judge and others) in Taylor's other cases arose not from bias, but from applying the governing law to the facts of those cases. Charlie Taylor has set forth no rationale for his assertion that the presiding judge harbors bias against him; he simply disagrees with the outcomes of the cases he has litigated in this court thus far. Such disagreement, however, does not constitute proof of bias. Indeed, at least one party loses every time a court renders a decision – be it an order on motion or the disposition of a case. If the court were to adopt the plaintiff's rationale – presuming bias each time a judge rules against a party – every litigant would quickly run out of judges to preside over his federal case, as one party loses in every controversy. This argument is without merit.

Taylor's final argument is not clear in its details, but is nevertheless without merit. Taylor alleges that the court misstated a fact in its March 17, 2005, memorandum opinion. He argues either that no disciplinary hearing took place – or that such a hearing took place, but the defendant Sonja Stanciel did not testify at that hearing. Even if the court assumed these facts to be true, Charlie Taylor's claims would fail. In his complaint and in several other papers presented to the court, Taylor asserts these facts:

1. He had some five bankers boxes of papers in storage at the Mississippi State Penitentiary and in excess of six inches in his immediate possession.

2. Mississippi Department of Corrections policy 20.11, permits an inmate to keep one bankers' box of legal work at MDOC in storage, and up to six inches of paperwork in his immediate possession.

3. The defendants gave Taylor multiple opportunities to have the excess paperwork moved off-site – either shipped to a bona fide charity or sent to someone outside the Mississippi Department of Corrections.

4. Taylor refused to sign the requisite documents or otherwise cooperate in the orderly disposition of his legal and religious papers.

5. Taylor was issued a rule violation report for his refusal to cooperate in the process of removing his excess papers to a location outside the Mississippi State Penitentiary.

6. He was punished for his refusal to sign the non-allowable property form by thirty days' loss of canteen and telephone privileges.

First, Taylor was not entitled to due process on the claim regarding his punishment for failing to sign the non-allowable property sheet. The facts of that claim thus do not state a claim upon which relief could be granted. Loss of canteen and telephone privileges is not a punishment

that rises to the level of a due process violation; as such, Taylor was not entitled to a hearing on the matter. *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). In any event, he was afforded a hearing and simply disagrees with the outcome. This claim must fail.

Taylor also enjoyed due process regarding the confiscation and eventual destruction of his legal and religious papers. The defendants repeatedly offered him the opportunity to go through his papers and send the four boxes excess of that allowed somewhere outside the Mississippi State Penitentiary. The procedure comports with Mississippi Department of Corrections Policy 20.11. Taylor, however, repeatedly refused to cooperate in that process and, after several warnings, the defendants destroyed the excess documents. The procedure employed provided Taylor all the process he was due; as such, he cannot now use his own stubborn refusal to participate in that process to bootstrap a claim that he was denied it. This claim is also without merit. In sum, Taylor's response to the court's show-cause order fails to convince the court that his allegations in this case state a cognizable claim. As such, the court must craft sanction appropriate for the circumstances.

## The Appropriate Sanction

The court has accepted, reviewed, and ruled upon Charlie Taylor's multitudinous pleadings, motions and other papers for some time. None of these submissions had merit. After Taylor accumulated three "strikes" under 28 U.S.C. §§ 1915 (e)(2)(B)(i) and 1915(g), the court prohibited him from filing any further cases *in forma pauperis*, unless he was in imminent danger of serious physical harm. Unswayed by this statutory sanction, Taylor continued filing one meritless case after another and simply paid the filing fee in each case. While the court has considered several sanctions, the most appropriate in this case is to prohibit Taylor from filing any future cases without written consent from a district judge of this court.

The court has several sources from which it draws the power to levy sanctions, all of which apply to Charlie Taylor in this case.[2] Under FED. R. CIV. P. 11, the court may sanction an attorney or party for misrepresentations to the court, as well as papers submitted to the court or arguments made before the court that are frivolous or harassing. In addition, under 28 U.S.C. § 1927, a court may sanction an attorney or other person admitted to conduct cases in federal court who unreasonably and vexatiously multiplies the proceedings. The award may consist of the *excess* costs and attorneys' fees – which may be *all* costs and fees in some circumstances. Finally, a court may levy sanctions against a litigant or attorney under its inherent power. This one serves as a "catch-all;" the Supreme Court acknowledges the need for the inherent power sanction when sanctions are clearly appropriate but none of the sanctions statutes or rules seem to apply. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

A district judge may use the inherent power of the court to fashion nearly any sanction he deems appropriate to the circumstances. The court's *inherent power* to impose sanctions for bad-faith conduct is not displaced by the sanctions scheme of statutes and rules. The court is not forbidden to sanction such conduct under its inherent power simply because that conduct could also be sanctioned under statute or rule. If neither the statute nor the rules are up to task, the court may safely rely on its inherent power. *Chambers,* 501 U.S. 32. The inherent power of the court emanates from the "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers,* 501 U.S. 32 (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630-631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). The particular amount of an inherent power sanction is "uniquely committed to the sound discretion

---

[2]The authority cited in this memorandum opinion is based upon sanctions imposed in different circumstances, such as the discovery rules, Rule 11, § 1927 and the court's inherent power. Unless otherwise stated, the rules set forth will apply to all types of sanctions.

of the imposing court." *Crowe v. Smith*, 151 F.3d 217 (5th Cir. 1998). The court must, however, choose the least severe sanction necessary to deter the sanctionable conduct. *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir. 1988).

As the "three strikes" sanction was insufficient to stem the tide of Charlie Taylor's meritless cases, the court shall prohibit Taylor from filing any case in this court without written permission from a district judge. This process will serve to screen out the frivolous cases and thus end Taylor's paper assault on the court. In order to file a case in this court, Charlie Taylor must send a proposed complaint directly to the Chief Judge, with a copy of this memorandum opinion and accompanying final judgment. If the Chief Judge determines that the complaint states a claim, then he shall forward it to the Clerk of the Court for docketing and filing. If, however, the Chief Judge determines that the complaint does not state a claim, then it shall be set aside and neither acknowledged nor addressed. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED**, this the 19th day of April, 2005.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE